## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

ZEBULUN MCCRIMAGER,

        Plaintiff,

v.                                     Case No.  5:18-cv-85-MCR/MJF

SWAIN,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Zebulun McCrimager ("McCrimager"), an inmate of the Florida Department of Corrections ("FDOC") proceeding *pro se* and *in forma pauperis*, commenced this civil rights action by filing a complaint under 42 U.S.C. § 1983 (Doc. 1).[1] This cause is now before this Court on Defendant's motion to dismiss. (Doc. 34). McCrimager responded in opposition to this motion. (Doc. 35). The undersigned respectfully recommends that the District Court grant the Defendant's motion and dismiss this action due to McCrimager's failure to exhaust administrative remedies and his failure to state a claim upon which relief can be granted.

---

[1] The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background

### A.    Procedural Background

On April 2, 2019, McCrimager commenced this case against five defendants: Defendant Captain Swain, three unknown male defendants, and one unknown female defendant. (Doc. 1 at 2-3). All defendants were employed at the Northwest Florida Reception Center when the events at issue occurred.[2] (*Id.*). On April 9, 2018, Magistrate Judge Gary R. Jones, issued an order updating the docket to reflect one named Defendant, Captain Swain. McCrimager was informed that should he discover the identities of the "John Doe" Defendants, he could seek leave to amend his complaint to add other defendants. (Doc. 5 at 1). McCrimager never named additional defendants. Thus, Defendant Swain is the sole defendant in this action.

### B.    Plaintiff's Allegations

The relevant facts are taken from McCrimager's verified complaint and are assumed to be true for purposes of the motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (holding that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

---

[2] McCrimager refers to the location of the events as the "Washington Correctional Institution." Washington Correctional Institution was renamed the "Northwest Florida Reception Center."

On November 14, 2014, while in the "chow hall" at the Northwest Florida Reception Center, an inmate stabbed McCrimager in the back. (Doc. 1 at 7). A prison staff member contacted Defendant on the radio to inform him that he "believed" that McCrimager had been stabbed because he was bleeding from his back. (*Id.*). Defendant reportedly responded "so." (*Id.*). Notably, McCrimager's complaint contains no other factual allegations regarding Defendant or the Defendant's knowledge regarding whether McCrimager was provided medical care. (Doc. 1). In his response to the motion to dismiss, however, McCrimager makes a conclusory allegation that Defendant made the decision to take him to the "conf. unit." (Doc. 35 at 2).

McCrimager was then taken to the "conf. unit" by an unidentified officer, placed in a shower, and was left there for an unspecified amount of time without immediately receiving medical care. McCrimager contends he should have been taken directly to the medical unit. (*Id.* at 7). Sometime after the officer placed McCrimager in the shower, an unidentified female officer met with McCrimager, but she allegedly refused to obtain medical care for him because he would not cooperate with her investigation of the stabbing. (*Id.*).

At some point, McCrimager was seen by a nurse. (*Id.* at 6). The nurse allegedly said that he was "in need of stiches but [since] staff delay [he] was too late for proper treatment." (Doc. 1 at 6). In his complaint, McCrimager does not specify

the amount of time he remained in the shower before he received medical attention. In his response to the motion to dismiss, however, he states that it was several hours. (Doc. 35).

### C.    Defendant's Motion to Dismiss

On September 21, 2018, Defendant filed a motion to dismiss the complaint. (Doc. 34). In his motion, Defendant argues that McCrimager: (1) failed to exhaust his administrative remedies; (2) failed to state a claim upon which relief can be granted; and (3) cannot recover compensatory and punitive damages at trial because he did not suffer a "physical injury" from any constitutional violation. (Doc. 34 at 4-12). Because the undersigned recommends that this case be dismissed for failure to exhaust administrative remedies and failure to state a claim, the undersigned does not address Defendant's motion to limit McCrimager's recovery at trial to only nominal damages.

## II.    Standard of Review

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. In applying that rule, the allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. *See Davis v. Monroe Cty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quotation and citation omitted).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted).

Courts hold a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers" and accordingly construe it "liberally." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citation omitted). Courts must not, however, "serve as *de facto* counsel" or "rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168-69 (quoting *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## III.   Discussion

### A.   <u>Failure to Exhaust Administrative Remedies</u>

Defendant first moves for dismissal based on McCrimager's failure to exhaust his administrative remedies. (Doc. 34 at 4-7)

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a § 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Alexander v. Hawk*, 159 F.3d 1321, 1323-24 (11th Cir. 1998). "'[W]hen a state provides a grievance procedure for its prisoners . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.'" *Bryant v. Rich*, 530 F.3d 1368, 1372-73 (11th Cir. 2008) (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005)).

Exhaustion of administrative remedies serves two main purposes:  first, it protects administrative agency authority, in that it gives an agency an opportunity to

correct its own mistakes with respect to the programs it administers before it is haled into federal court; and, second, it promotes efficiency in that claims generally can be resolved more quickly and economically in proceedings before an agency than in litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88-89, 126 S. Ct. 2378, 2384-85 (2006).

To serve these ends, "exhaustion in cases covered by § 1997e(a) is now mandatory . . . ." *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002); *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 1824 (2001) (noting that the PLRA requires "procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible"). The PLRA requires "proper exhaustion" that complies with the "critical procedural rules" governing the administrative process. *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . —rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 922 (2007) (quoting *Woodford*, 548 U.S. at 88, 126 S. Ct. at 2384). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting *Goebert v. Lee Cty.*, 510 F.3d 1312, 1322-23 (11th Cir. 2007)). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Id.* "[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." *Turner*, 541 F.3d at 1082. "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.*

"First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74). A defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.*; *Jones*, 549 U.S. at 216, 127 S. Ct. at 921

("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); *Dixon v. United States*, 548 U.S. 1, 8, 126 S. Ct. 2437, 2443 (2006); *Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Turner*, 541 F.3d at 1083.

To exhaust administrative remedies in Florida, a prisoner generally must: (1) file an informal grievance with a designated prison staff member on Form DC6-236 within 20 days of the incident; (2) file a formal grievance with the institution's warden on Form DC1-303; and (3) submit an appeal to the Central Office of the Secretary on Form DC1-303. *See Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code §§ 33–103.005–103.007). If an inmate is filing a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance, submitted on Form DC1-303, at the institutional level. *See* Fla. Admin. Code §§ 33-103.006(1), (3)(e), 33-103.008(1), 33-103.019. If the inmate is dissatisfied with the result of the medical formal grievance (for example, if it is denied), the inmate is authorized to appeal to the Central Office. *Id.* §§ 33-103.007(1), 33-103.008(2).

An inmate may bypass the formal grievance step and file a direct grievance with the Central Office if the grievance is an emergency grievance or a grievance concerning reprisal, protective management, admissible reading material, sentence

structure (release date calculations), inmate banking, sexual abuse, or a violation of the Health Insurance Portability and Accountability Act ("HIPPA"). *See* Fla. Admin. Code § 33-103.007(6)(a). If an inmate is filing a direct grievance, he must state at the beginning of the grievance that the grievance concerns either an emergency or one of the other issues that is properly addressed in a direct grievance. *See id.*, § 33-103.007(6)(a)1. The inmate must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and bypassing the informal and formal grievance steps, except in the case of a HIPPA violation or sexual abuse grievance. *See id.*, § 33-103.007(6)(a)2.

If the grievance is a direct formal grievance, it must be received by the warden, assistant warden, or deputy warden no later than 15 calendar days from: (1) the date of the response to the informal grievance; or (2) the date on which the incident or action being grieved occurred. *See* Fla. Admin. Code § 33-103.011(1)(b). The warden, assistant warden, or deputy warden must respond to the grievance within 20 calendar days following receipt of the grievance. *See id.*, § 33-103.011(3)(b). In the event that an inmate feels that the grievance has not been satisfactorily resolved during the formal grievance procedure, the inmate may submit an appeal to the Office of the Secretary ("Central Office"). *See id.*, § 33-103.007(1). Grievance appeals to the Central Office must be received within 15 calendar days from the date of the response to the formal grievance. *See* Fla. Admin. Code § 33-103.011(1)(c).

The Central Office must respond to the grievance appeal within 30 calendar days from the date of receipt of the grievance. *See* Fla. Admin. Code § 33-103.011(3)(c). Unless the inmate has agreed in writing to an extension of the deadline for responding to grievances and appeals, expiration of a time limit at any step in the process entitles the inmate to proceed to the next step of the grievance process. *See* Fla. Admin. Code § 33-103.011(4).

The grievance procedure provides for an extension of the time frames imposed upon inmates as follows:

> (2) An extension of the time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority . . . or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner.  The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in Rule 33-103.014, F.A.C.

Fla. Admin. Code § 33-103.011(2). The deficiencies cited in Rule 33-103.014 include:

> (e) The formal grievance was not received within 15 calendar days of the date on which the incident or action being complained about occurred, if an informal grievance was not filed pursuant to subsection 33-103.006(3), F.A.C.

> (f) The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable.  This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.

(g) The grievance did not have the attachments required: informal grievance and response, except as allowed for in paragraphs 33-103.006(3)(a) through (h), F.A.C., or the formal grievance and response, except as provided for in subsection 33-103.007(6), F.A.C.;

(h) The direct grievance to the Office of the Secretary was not received within 15 calendar days of the date that the incident or action being grieved occurred; or

(i) The grievance appeal was not received within 15 calendar days from the date of the response to the formal grievance.
. . . .

(o) The inmate is raising allegations and charges in a grievance appeal that have not been raised below at the previous level.

Fla. Admin. Code § 33-103.014(1).

An inmate who has a grievance returned to him for reasons stated in § 33-103.014(1)(f), (g), or (o) may re-file utilizing the proper procedure or correct the stated deficiency and re-file if upon receipt of the notification the filing is within allowable time frames. *Id.* § 33-103.014(2). When a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned and told that in order for him to receive administrative review of his complaint he must correct the defects and resubmit the grievance within the time frames set forth in § 33-103.011, unless instructed otherwise in the grievance response. *Id.* Instructions to resubmit are not necessary if a grievance is returned for reasons stated in paragraphs (1)(e), (h), or (i). *Id.*

Additionally, all informal and formal grievances must be filed at the institution or facility to which the inmate is "presently assigned," meaning where the inmate is housed at the time he files the grievance. *See* Fla. Admin. Code § 33-103.015(4). When a grievance concerns an issue that occurred at another location, it is the responsibility of the staff at the inmate's present location to handle the grievance. *See id.* Final resolution of the grievance is the responsibility of the warden at the institution where the inmate is presently assigned, but direct contact with outside staff may be necessary in resolving the grievance. *See id.*

In this case, McCrimager filed numerous grievances, but none related to McCrimager's claim of deliberate indifference to a serious medical need.

On November 16, 2014, McCrimager filed a formal grievance alleging that the disciplinary report he received in relation to the stabbing was a coverup by prison officials. (Doc. 34-2 at 4). In the grievance, McCrimager mentioned that he was not taken to the medical wing, however, he made no further allegations regarding this and provided no additional discussion to suggest that the grievance was even remotely related to a delay in receiving medical care. (*Id.*). Instead, the grievance focused on the disciplinary report. Indeed, the only relief he sought in the grievance was that the disciplinary report be dismissed. (*Id.*).

On November 17, 2014, McCrimager filed an Emergency Appeal to the Secretary for the Department of Corrections requesting that he be transferred

because he feared for his life. (Doc. 34-1 at 7). In this grievance, McCrimager included facts related to the events that occurred after he was stabbed, including the fact that he was transferred to a different unit and placed in a shower to await medical care. (*Id.*). This appeal, however, still failed to allege facts that put the administration on notice that any constitutional violation had occurred with respect to a delay in receiving medical care. Furthermore, the only relief sought was a transfer to another prison. On December 16, 2014 the appeal was denied because by that time McCrimager had already been granted a transfer to the Jefferson Correctional Institution. (*Id*. at 6).

On November 17 and November 18, 2014, McCrimager filed informal grievances alleging that he feared for his life and requesting that he be transferred yet again. He again made no reference to any delay in his receipt of medical treatment, and instead contended only that he believed someone wanted to kill him and that his life was in danger. (Doc. 34-2 at 13-14). McCrimager requested as relief that he be transferred to another prison. (*Id*.). Both grievances were returned to McCrimager after noting that his request for protection had already been forwarded to FDOC officials. (*Id.*).

On November 19, 2014, McCrimager filed a formal grievance alleging that prison officials were not adhering to his protective custody designation and requesting immediate protection. (Doc. 34-2 at 6). Again, this grievance made no

reference to the alleged delay in receiving medical treatment at issue in this case. (Doc. 34-2 at 6-10). On December 26, 2014, this grievance was denied for failure to adhere to administrative rules. (Doc. 34-2 at 5).

On November 24, 2014, McCrimager filed an amendment to his November 16 grievance in the form of a grievance regarding the disciplinary report, but he again failed to raise any issues related to the medical care he received after the stabbing. (Doc. 34-2 at 12). On December 12, 2014, and December 19, 2014, the FDOC denied McCrimager's initial grievance and the amendment and informed McCrimager that he had 15 calendar days to file an appeal. (*Id.* at 3).

As noted above, McCrimager's claim in this case is that Defendant was deliberately indifferent to a serious medical need when he delayed McCrimager's receipt of medical treatment after he was stabbed. (Doc. 1 at 7). Although the grievances McCrimager filed sometimes mentioned the stabbing in an effort to show that McCrimager believed he was in danger, McCrimager did not make deliberate indifference to a serious medical need the gravamen of any of the grievances. He never provided sufficient notice to the FDOC that this was his complaint. Therefore, these grievances were insufficient to exhaust his administrative remedies regarding this claim.

McCrimager also alleges that he refiled these grievances in 2017 and 2018. (Doc. 32 at 1). That is well outside of the deadlines established by the Florida

Administrative Code. *See* Fla. Admin. Code §§ 33-103.005-103.011. Regardless, merely refiling the grievances discussed above similarly would not have provided notice to the FDOC that McCrimager was complaining about delayed medical treatment.

McCrimager also claims that his failure to exhaust administrative remedies should be excused because this failure was due to FDOC transferring him among prisons. (Doc. 32 at 1). The Florida Administrative Code, however, clearly specifies how an inmate may file a grievance even if he is transferred. Furthermore, McCrimager was only transferred *once* during the period in which he could have exhausted his administrative remedies. As mentioned above, on December 15, 2014—at McCrimager's request—FDOC transferred him to the Jefferson Correctional Institution. (Doc. 34-3). He was not transferred again until June 2, 2015. So these arguments ring hollow.

McCrimager also alleges that the Florida Department of Corrections lost and/or mishandled the grievances he filed. However, a conclusory allegation devoid of factual support is insufficient and entitled to no weight. *See Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1951. Additionally, Defendant produced six grievances filed by McCrimager related to the stabbing incident. None of these grievances included a claim of deliberate indifference to a serious medical need. This makes McCrimager's allegation that he filed other grievances even more dubious.

The record is clear that McCrimager never once raised a claim of deliberate indifference to a serious medical need in his grievances or appeals. By failing to do so, he failed to exhaust his administrative remedies. Under the PLRA, a district court cannot proceed to adjudicate the merits of a prisoner's claim when he failed to exhaust his administrative remedies. Therefore, McCrimager's complaint should be dismissed for his failure to exhaust administrative remedies.

**B.      Deliberate Indifference to a Serious Medical Need**

Defendant moves to dismiss McCrimager's complaint on a second independent ground:  failure to state a claim for deliberate indifference to a serious medical need. (Doc. 34 at 8-10).

"'[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being.'" *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-06 (1989)). Because an inmate "must rely on prison authorities to treat his medical needs," prison officials have an "obligation to provide medical care for those whom it is punishing by incarceration," and failure to meet that obligation can constitute a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976).

"An express intent to inflict unnecessary pain is not required." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986). Rather, to prevail on an Eighth Amendment claim for providing inadequate medical care, a plaintiff must establish that a defendant showed "deliberate indifference" to his "serious medical needs." *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291; *see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S. Ct. 995, 998 (1992) ("[T]he appropriate inquiry when an inmate alleges that that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"). Thus, courts "considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S. Ct. 2321, 2324, 2326 (1991)). This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012); *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000).

Accordingly, to prevail on an Eighth Amendment claim of deliberate indifference to a serious medical need, a plaintiff must show that:

(1) he had a serious medical need;

(2) the defendant was deliberately indifferent to that need; and

(3) there is a causal connection between the defendant's act or omission and the constitutional deprivation. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007); *Taylor*, 221 F.3d at 1258.

### 1.    *Failure to Allege Facts Indicating that the Defendant Was Deliberately Indifferent*

An inmate must show that a defendant was deliberately indifferent to his "serious" medical need. *Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1864 (2017); *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994); *Wilson*, 501 U.S. at 303, 111 S. Ct. at 2327; *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291. This "requires 'more than ordinary lack of due care for the prisoner's interest or safety.'" *Farmer*, 511 U.S. at 835, 114 S. Ct. at 1978 (quoting *Whitley*, 475 U.S. at 319, 106 S. Ct. at 1084). Mere "accidental or inadvertent failure to provide adequate medical care to a prisoner" does not violate the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480 (1993). Rather, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. Deliberate indifference requires "the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *see Mandel v. Doe*,

888 F.2d 783, 788 (11th Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference").

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) (noting that the "subjective prong of deliberate indifference is an extremely high standard"). In other words, the "deliberate indifference standard is 'a difficult burden for a plaintiff to meet' . . . ." *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990)); *Toguchi v. Chung*, 391 F.3d 1051, 1057, 1060 (9th Cir. 2004) (noting that deliberate indifference is a "high legal standard" requiring actual knowledge); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard . . . .").

Here, McCrimager has not alleged facts indicating that Defendant knew that McCrimager had a serious medical need. McCrimager simply alleged that another prison guard informed Defendant that he "believed" that McCrimager had been stabbed. (Doc. 1 at 7). That alone is insufficient to allege that the Defendant possessed the requisite knowledge for deliberate indifference. Knowledge that a prison guard "believed" someone had been stabbed does not indicate that the Defendant knew McCrimager needed immediate medical attention.  Even if the Defendant knew that McCrimager had been stabbed, knowledge of a stabbing does

not establish knowledge that the stabbed individual requires medical attention. A person could be stabbed so slightly that he would not require medical care. McCrimager's complaint does not allege facts that would indicate that the Defendant knew McCrimager required medical care. Facts that could give knowledge of a need of medical attention include:

- the type of instrument that was used to stab the person;

- the depth of the stab wound;

- the amount of force that was applied in the stabbing;

- the exact location of the stab wound;

- the number of times a person had been stabbed;

- the extent of the pain the person was experiencing;

- the extent that the individual is bleeding from the wound;

- the extent of any delay that had occurred in providing medical treatment; and

- whether the stabbed individual requested medical care.

According to McCrimager's complaint, nobody provided anyone with this type of information. Because, according to the complaint, the Defendant was not present for the stabbing and was not provided any of this information, McCrimager has not alleged facts indicating that the Defendant possessed knowledge of McCrimager's serious medical need. Without such knowledge, Defendant could not be indifferent

to McCrimager's medical need, deliberately or otherwise. McCrimager has not alleged that the Defendant knew McCrimager required treatment or even that McCrimager was not receiving prompt treatment. Accordingly, McCrimager has failed to state a claim for deliberate indifference to a serious medical need.

### 2. *Failure to Allege Facts Indicating a Causal Connection*

McCrimager also failed to state a claim in yet a second independent way. McCrimager was required to allege facts indicating that there was a causal connection between the Defendant's acts or omissions and the constitutional violation. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306, 106 S. Ct. 2537, 2542 (1986) (noting that all section 1983 plaintiffs must show that the defendant caused the relevant constitutional violation); *Melton*, 841 F.3d at 1228; *Mann*, 588 F.3d at 1306-07; *Rodriguez*, 508 F.3d at 625. Section 1983 requires "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). The act or omission must be the cause—"not merely a contributing factor"— of the constitutional violation. *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). "In other words, the official's act must both be the cause-in-fact of the injury and its proximate cause." *Hoffman v. Knoebel*, 894 F.3d 836, 841 (7th Cir. 2018).

In deliberate indifference cases, a plaintiff must allege facts indicating that the defendant's deliberate "indifference was the actual and proximate cause of the

deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *see Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (explaining that plaintiffs alleging deliberate indifference in § 1983 actions "must . . . demonstrate that the defendants' actions were both an actual and proximate cause of their injuries"); *LaMarca*, 995 F.2d at 1538-39 (observing that a plaintiff must show that deliberate indifference was the proximate cause of the injury he suffered). Actions or omissions by government officials which are "too remote" in the chain of causation cannot be considered the cause of a constitutional deprivation. *Martinez v. State of Cal.*, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980). "So to say that one event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result." *Paroline v. United States*, 572 U.S. 434, 444, 134 S. Ct. 1710, 1719 (2014). Determining causation "entails a very individualized approach, taking into account the duties, discretion and means of each defendant." *Williams. v. Bennett*, 689 F.2d12 1370, 1384 (11th Cir. 1982); *see also Rodriguez*, 508 F.3d at 622; *LaMarca*, 995 F.2d at 1539.

Here, McCrimager's complaint alleges the Defendant was notified, via radio, that a prison guard "believed" that McCrimager had been stabbed and Defendant responded "so." (Doc. 1 at 6). As mentioned above, this is the only allegation regarding the Defendant in the entirety of McCrimager's complaint. The complaint

does not allege that Defendant knew that McCrimager needed immediate medical attention. (Docs. 1, 35). Without such knowledge, it would be impossible for any act or omission by Defendant to proximately cause the delayed treatment. For this reason alone, McCrimager has failed to allege facts indicating that Defendant was the actual and proximate cause of the constitutional violation.

In his response to the motion to dismiss, McCrimager alleged that it was Defendant's decision to have him taken to the "conf. unit" and not directly to medical. (Doc. 35 at 4, ¶ 10). But this is not part of McCrimager's complaint, and it is also a conclusory allegation that fails to state how McCrimager knows that Defendant made this decision. Such conclusory allegations are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1951. Beyond these infirmities, even if it this decision had been made by Defendant, this does not sufficiently allege that the Defendant knowingly caused the delay in McCrimager's receipt of medical care. It merely indicates that the Defendant ordered McCrimager to be taken to the "conf. unit." McCrimager fails to allege that moving him to the "conf. unit" to await medical treatment was unreasonable given that a fight has just taken place in the "chow hall," or that Defendant necessarily knew that taking McCrimager to the "conf. unit" would deprive him of prompt medical care, and that this deprivation would continue for hours.

Furthermore, after he was taken to the "conf. unit," McCrimager claims that he expressed his need for medical treatment to at least four other prison employees who—unlike the defendant—were physically present and might have been able to observe any wounds. (Doc. 1 at 6-7). Assuming that McCrimager truly had suffered a serious injury and these employees knew this, all four employees had the duty to obtain medical care for McCrimager. In the chain of causation of any delay, they are more proximately located than the Defendant. Of course, that would not absolve the Defendant of responsibility if he ordered that Plaintiff not receive medical treatment. Defendant was a captain and could reasonably expect that an such order would be obeyed. Liability is broader than simply the most proximate actor. But these other actors are relevant here insofar as Plaintiff does not allege that any of these four employees ever notified Defendant that McCrimager needed medical care so as to give Defendant knowledge and thereby put him in the chain of causation. According to the facts alleged in the complaint, therefore, Defendant's actions or omissions cannot be said to be the proximate cause of the delay in treating McCrimager. Accordingly, McCrimager has failed to establish that Defendant caused the delay in McCrimager's receipt of medical care. For this second independent reason, therefore, McCrimager has failed to state a claim upon which relief may be granted.

## IV.   Conclusion

Accordingly, for the reasons set forth above, the undersigned respectfully

**RECOMMENDS** that:

1.      Defendant's motion to dismiss (Doc. 34) be **GRANTED**.

2.      Defendant's complaint be **DISMISSED** with prejudice.

3.      The Clerk of the Court be instructed to **CLOSE** the case file.

At Panama City, Florida this 22ⁿᵈ day of February, 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**